IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| GEORGE H. HADDAWAY, JR. | * | |
| Plaintiff, | * | |
| v. | * | Civil No.: BPG-18-1903 |
| BALTIMORE COUNTY, MARYLAND | * | |
| Defendant | | |
| | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM OPINION

Currently pending before the court are defendant's Motion for Summary Judgment (ECF No. 29), plaintiff's Opposition to Defendant's Motion for Summary Judgment (ECF No. 34), defendant's Reply in Further Support of Defendant's Motion for Summary Judgment (ECF No. 37), plaintiff's Motion to Submit Amended Affidavit (ECF No. 38), defendant's Reply to Motion to Submit Amended Affidavit (ECF No. 39), and plaintiff's Reply to Defendant's Opposition to Plaintiff's Motion to Submit Amended Affidavit (ECF No. 40). The issues are fully briefed, and no hearing is necessary. Loc. R. 105.6. Plaintiff's Motion to Submit Amended Affidavit (ECF No. 38) is granted and, for the reasons stated below, defendant's Motion for Summary Judgment (ECF No. 29) is granted.

### I. BACKGROUND

In ruling on a motion for summary judgment, this court considers the facts and draws all reasonable inferences in the light most favorable to the nonmoving party, which is the plaintiff in this case. Scott v. Harris, 550 U.S. 372, 378 (2007). Plaintiff brings this employment

discrimination action against defendant, alleging violations of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e, et seq., and the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. §§ 12111, et seq., based on alleged acts of discrimination and retaliation by his supervisor, Mr. Raymond Bass ("supervisor" or "Bass"). Plaintiff asserts Bass discriminated against him based on his national origin and his disability, and that he was retaliated against for engaging in a protected activity. (ECF No. 1 at 5–6.)

Plaintiff has been employed by Baltimore County as a Safety Officer since March 22, 2010 and is currently supervised by Bass, who is the Safety and Training Supervisor. (ECF No. 34 at 2). Plaintiff is of Cuban descent, through his maternal grandmother, and suffers from neuropathy, gout, and arthritis. (Id. at 1). Since 2011, the year after plaintiff was hired, plaintiff has received regular unpaid leave under the Family and Medical Leave Act ("FMLA") for personal medical reasons. (Id. at 1). On January 6, 2014, plaintiff requested a flexible work schedule to accommodate his disability. (Id., Ex. 3 at 6). Plaintiff was granted an accommodation authorizing him to work a flexible four-day work week. (Id.; ECF No. 29-1 at 5).

Plaintiff alleges that since June 2013, Bass has copied the Bureau Chief, Mr. James Lathe ("Lathe"), on emails regarding plaintiff's leave requests. (ECF No. 34 at 2, Ex. 5). Plaintiff maintains that Bass also copied Lathe on leave requests for the only other minority employee under Bass' supervision, but Lathe was not copied on leave requests for the non-minority employees. (Id.) In addition, plaintiff alleges that any time he planned to be out of the office, he was required to email and call his supervisor, whereas other employees were given the option to use only one method of communication, including email, phone, or text. (Id. at 3–4, Ex. 6, Ex. 8).

In March 2015, plaintiff received a written reprimand and one-day suspension for not being present at work during a snow emergency on March 20, 2015. (Id. at 9–10). Plaintiff had earlier requested leave on March 20 for an out of town trip and he was out of the office from March 18–19 on FMLA leave. (Id., Ex. 23). A fellow Bureau of Highways employee called plaintiff's county-issued cell phone on March 19 to inform plaintiff of a "general call in" on March 20 for a snow event. (Id. at 9–10) Plaintiff maintains he was unaware of this call and did not report for duty on March 20 because he believed he was on approved leave that day. (Id.). As a result of this absence, plaintiff received a written reprimand and one-day suspension without pay. (Id., Ex. 23). This one-day suspension without pay was later rescinded by Lathe and the Director of the Department of Public Works overturned the written reprimand after an appeal by plaintiff. (Id.)

In 2016, 2017, and 2018 plaintiff received "needs improvement" ratings on his annual performance reviews. (ECF No. 34 at 10–11; ECF No. 29-9; ECF No. 29-10). In April 2016, plaintiff received a "needs improvement" rating for attendance; however, this rating was later upgraded to "successful" because the majority of plaintiff's sick leave usage had been covered under the FMLA. (ECF No. 34 at 10, Ex. 20; ECF No. 29-6 at 6). In May 2017, plaintiff received "needs improvement" ratings for service motivation and personal accountability. (ECF No. 34 at 10–11; ECF No. 29-9). Similarly, in February 2018, plaintiff received a "needs improvement" rating for personal accountability. (ECF No. 34 at 11; ECF No. 29-10). Plaintiff did not lose any pay or benefits as a result of these performance ratings. (ECF No. 29-1 at 6).

On October 31, 2016 plaintiff initiated charges against defendant with the Equal Employment Opportunity Commission ("EEOC") and the Maryland Commission on Civil Rights ("MCCR") alleging that he was discriminated against on the basis of his national origin and

disability, and retaliated against after he protested about the discrimination. (ECF No. 1 at 9–10). Plaintiff filed the instant case before this court on June 25, 2018. (Id. at 1).

## II. STANDARD OF REVIEW

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute remains "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is properly considered "material" only if it might affect the outcome of the case under the governing law. Id. The party moving for summary judgment has the burden of demonstrating the absence of any genuine issue of material fact. Fed. R. Civ. P. 56(a); Pulliam Inv. Co., Inc. v. Cameo Props., 810 F.2d 1282, 1286 (4th Cir. 1987). On those issues for which the nonmoving party will have the burden of proof, however, it is his or her responsibility to oppose the motion for summary judgment with affidavits or other admissible evidence specified in Federal Rule of Civil Procedure 56. Fed. R. Civ. P. 56(c); Mitchell v. Data Gen. Corp., 12 F.3d 1310, 1315–16 (4th Cir. 1993). If a party fails to make a showing sufficient to establish the existence of an essential element on which that party will bear the burden of proof at trial, summary judgment is proper. Celotex Corp. v. Catrett, 477 U.S. 317, 322–23 (1986).

When reviewing a motion for summary judgment, the court does not evaluate whether the evidence favors the moving or nonmoving party, but considers whether a fair-minded jury could return a verdict for the nonmoving party on the evidence presented. Anderson, 477 U.S. at 252. In undertaking this inquiry, the court views all facts and makes all reasonable inferences in the light most favorable to the nonmoving party. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio

4

Corp., 475 U.S. 574, 587 (1986). The nonmoving party, however, may not rest on its pleadings, but must show that specific, material facts exist to create a genuine, triable issue. Celotex, 477 U.S. at 324. A "scintilla" of evidence in favor of the nonmoving party, however, is insufficient to prevent an award of summary judgment. Anderson, 477 U.S. at 252. Further, "mere speculation" by the nonmoving party or the "building of one inference upon another" cannot create a genuine issue of material fact. Cox v. Cty. of Prince William, 249 F.3d 295, 299–300 (4th Cir. 2001). Summary judgment should be denied only where a court concludes that a reasonable jury could find in favor of the nonmoving party. Anderson, 477 U.S. at 252.

### III. DISCUSSION

#### A. Discrimination

Claims of discrimination and retaliation under Title VII and the ADA may be proved either by direct evidence of discrimination or by utilizing the McDonnell Douglas burden-shifting framework. See McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). Under the McDonnell Douglas burden-shifting framework, the plaintiff must first make out a prima facie case for discrimination. Id. If the plaintiff proves a prima face case, the burden shifts to the employer to produce evidence of a non-discriminatory, legitimate reason for the action. Hoyle v. Freightliner, LLC, 650 F.3d 321, 336 (4th Cir. 2011). If the employer provides such a reason, the burden shifts back to the plaintiff to prove that defendant's reason was a pretext for unlawful discrimination. Love-Lane v. Martin, 355 F.3d 766, 786 (4th Cir. 2004).

##### i. National Origin Discrimination

Plaintiff alleges that his supervisor discriminated against him based on his Cuban national origin. (ECF No. 1 at ¶ 5). Plaintiff argues that he suffered national origin discrimination

5

because his supervisor, Bass, courtesy copied the Bureau Chief on plaintiff's and another minority coworker's leave requests, whereas Bass did not copy the Bureau Chief on non-minority coworkers' leave requests. (ECF No. 34 at 2). Plaintiff additionally asserts that Bass selectively chose not to copy the Bureau Chief on emails from plaintiff where, in conjunction with a leave request, plaintiff included information regarding his personal achievements. (Id.) Defendant denies these allegations and maintains that this claim fails because Bass and the other Safety Office employees were unaware of plaintiff's national origin until the department was notified of plaintiff's EEOC charge. (ECF No. 29-1 at 10).

Title VII prohibits an employer from "discriminat[ing] against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, . . . or national origin." 42 U.S.C. § 2000e–2(a). In order to prove a prima facie case of discrimination under Title VII, plaintiff must prove: (1) membership in a protected class; (2) satisfactory job performance; (3) adverse employment action; and (4) different treatment from similarly situated employees outside the protected class. Coleman v. Maryland Court of Appeals, 626 F.3d 187, 190 (4th Cir. 2010). An adverse employment action is one that "adversely affect[s] the terms, conditions, or benefits of the plaintiff's employment." Holland v. Washington Homes, Inc., 487 F.3d 208, 219 (4th Cir. 2007) (quoting James v. Booz–Allen & Hamilton, Inc., 368 F.3d 371, 375 (4th Cir. 2004)). An adverse employment action requires a "significant detrimental effect," id., and is typically found in cases of "discharge, demotion, decrease in pay or benefits, loss of job title or supervisory responsibility, or reduced opportunities for promotion." Madock v. McHugh, Civil No. ELH-10-2706, 2011 WL 3654460, at *15 (D. Md. Aug. 18, 2011), aff'd, 469 F. App'x 200 (4th Cir. 2012).

Although plaintiff's Cuban national origin qualifies him for membership in a protected class, plaintiff may not establish a prima facie showing of discrimination when he "provides no evidence tending to prove knowledge of [plaintiff's] protected class." Gladden v. Locke, Civil No. PJM 10-1756, 2011 WL 2619570, at *6 (D. Md. June 30, 2011), aff'd sub nom. Gladden v. U.S. Dep't of Commerce, 474 F. App'x 947 (4th Cir. 2012). "Without at least some plausible evidence indicating that at least one of the [employer's] officials was aware of [plaintiff's] race, his prima facie case of race discrimination falters." Id. at *6. As evidence of defendant's knowledge here, plaintiff provides one document maintained by the Office of Human Resources stating that plaintiff is Hispanic. (ECF No. 34, Ex. 4). Plaintiff provides no additional evidence tending to prove that his supervisor, Bass, the Bureau Chief, Lathe, or anyone else in the Safety Office was aware of his Cuban ancestry. In contrast, defendant provides affidavits from Bass and two safety officers, all of whom state they were not aware of plaintiff's Cuban descent until he filed either the EEOC Charge of Discrimination or the instant claim. (ECF Nos. 29-6 at 1, 29-11 at 1, 29-12 at 1). Of note, the sole affidavit plaintiff submits is from a minority coworker where she states that she "do[es] not believe that Mr. Bass treated [plaintiff] differently because of his ethnicity." (ECF No. 38-1 at 2). In sum, plaintiff has not established a genuine issue as to the first element of a prima facie case of discrimination because he has not provided evidence "tending to prove knowledge of [plaintiff's] protected class." Gladden, 2011 WL 2619570, at *6

As to the second factor, satisfactory job performance, defendant provides evidence that plaintiff received "needs improvement" ratings in the "service motivation" and "personal accountability" categories on his 2017 and 2018 annual reviews because "[plaintiff] ha[d] at times been uncooperative, and ha[d] failed or refused to abide by reasonable requests [Bass] made to him." (ECF Nos. 29-6 at 2, 29-9, 29-10). Plaintiff argues that he followed the required

7

procedures and that he was not adequately reprimanded at the time of the events, but he provides no evidence to support these claims. (ECF No. 34 at 11). Plaintiff's claim of satisfactory performance, however, "cannot establish a genuine issue as to whether [plaintiff] was meeting [employer's] expectations." King v. Rumsfeld, 328 F.3d 145, 149 (4th Cir. 2003) (citing Evans v. Technologies Applications & Serv. Co., 80 F.3d 954, 960−61 (4th Cir. 1996)). As a result, plaintiff's own claim of satisfactory performance is insufficient to generate a factual issue on this second element of a prima facie case. See Morrall v. Gates, 370 Fed. App'x 396, 398 (4th Cir. 2010) ("[plaintiff's] own, unsubstantiated assertions to the contrary are insufficient to stave off summary judgment"). Accordingly, plaintiff has not provided evidence showing a genuine dispute of material fact exists with regard to the second factor of a prima facie claim of discrimination.

Even assuming that plaintiff had provided evidence that defendant knew of his status in a protected class and that he had satisfactory job performance, plaintiff's national origin discrimination claim fails because he provides no evidence showing that he suffered an adverse employment action. Plaintiff argues that, one, Bass only copied Lathe on emails wherein minorities, including plaintiff, requested leave and, two, Bass selectively did not copy Lathe on plaintiff's leave requests that were accompanied by additional information, such as plaintiff's positive accomplishments. (ECF No. 34 at 2). Defendant provides evidence stating that Bass copied his supervisor, Lathe, on emails regarding staffing issues because "Lathe was ultimately responsible for all staffing in the Bureau of Highways." (ECF No. 29-6 at 3). In support of this position, defendant provides evidence showing that Lathe was copied on non-minority employees' leave requests, thereby refuting plaintiff's claim that Lathe was only copied on minority employees' leave requests. (ECF No. 37-1). Plaintiff provides no evidence to dispute

8

defendant's reasoning for copying Lathe on emails or that Lathe was copied on both minority and non-minority employees' leave requests. Further, plaintiff provides no evidence that he suffered adverse action resulting from Lathe being notified when plaintiff was on leave or from Lathe not being notified of plaintiff's positive accomplishments. An adverse employment action is one that "adversely affect[s] the terms, conditions, or benefits of the plaintiff's employment," Holland, 487 F.3d at 219, such as a decrease in benefits or reduced opportunity for promotion. Madock, 2011 WL 3654460, at *15–16. Here, plaintiff has not provided evidence that he lost leave benefits because Lathe knew of his leave requests or that plaintiff missed out on an opportunity for promotion because Lathe was unaware of plaintiff's accomplishments. Thus, plaintiff has not provided evidence that these incidents adversely impacted the terms and conditions of his employment. In sum, plaintiff has failed to demonstrate that he suffered any adverse employment action as a result of national origin discrimination.

Plaintiff has failed to show there is a genuine dispute of material fact with regard to the first three elements of a prima facie claim of national origin discrimination.[1] Thus, plaintiff's claim fails and, accordingly, summary judgment is granted as to plaintiff's Title VII national origin discrimination claim.[2]

---

[1] As noted above, while defendant produced evidence to refute plaintiff's allegations that the Bureau Chief was copied only on minority employees' leave requests and not copied on non-minority employees' leave requests, the court need not reach a conclusion regarding the fourth element, whether members outside plaintiff's protected class were treated more favorably, because plaintiff has failed to establish a genuine dispute of material fact as to the first three elements of a prima facie case of Title VII discrimination.

[2] In the Complaint, plaintiff checked a box alleging discrimination based on his Hispanic race. (ECF No. 1 at 5). Although plaintiff did not make any specific arguments about this claim, the court's analysis would mirror the national origin discrimination analysis herein. Accordingly, a claim of discrimination based on race would fail for the same reasons stated in the court's Title VII national origin discrimination analysis.

### ii. Disability Discrimination

Plaintiff's Complaint alleges a litany of incidents and claims that his supervisor harassed and discriminated against him on the basis of his disability.[3] The ADA provides that "[n]o covered entity shall discriminate against a qualified individual on the basis of disability . . . ." 42 U.S.C. § 12112(a). In order to establish a violation of this section, a plaintiff must prove that: (1) he has a disability, (2) he is a "qualified individual" for the employment in question, and (3) his employer took adverse employment action against him because of his disability. Jacobs v. N.C. Admin. Office of the Courts, 780 F.3d 562, 572 (4th Cir. 2015) (citing EEOC v. Stowe-Pharr Mills, Inc., 216 F.3d 373, 377 (4th Cir. 2000)).

A "qualified individual" with a disability under the ADA is someone "who, with or without reasonable accommodation, can perform the essential functions" of the job. 42 U.S.C. § 12111(8). Essential functions are those that "bear more than a marginal relationship to the job at issue." Tyndall v. National Educ. Centers, Inc. of California, 31 F.3d 209, 213 (4th Cir. 1994). Discrimination based on plaintiff's disability means that plaintiff's disability is the "but for" cause of the discrimination or adverse employment action. Gentry v. E.W. Partners Club Mgmt. Co. Inc., 816 F.3d 228, 235–36 (4th Cir. 2016). In this case it is undisputed that plaintiff has a disability and is a qualified individual under the ADA. (ECF No. 29-1 at 5–6). Thus, elements one and two are satisfied.

As to the third element, adverse employment actions under ADA discrimination are analyzed under the Title VII standard. Fox v. Gen. Motors Corp., 247 F.3d 169, 176 (4th Cir.

---

[3] In the Complaint, plaintiff checked boxes stating that "discriminatory conduct of which I complain in this action includes: [f]ailure to accommodate my disability [and] [u]nequal terms and conditions of my employment." (ECF No. 1 at 5). Because plaintiff did not include any statements specific to these claims in his Complaint or the underlying EEOC charge, the court cannot address these claims.

2001) (stating that "[b]ecause the ADA echoes and expressly refers to Title VII, and because the two statutes have the same purpose—the prohibition of illegal discrimination in employment—courts have routinely used Title VII precedent in ADA cases."). As stated in the national origin discrimination section above, an adverse employment action is one that "adversely affect[s] the terms, conditions, or benefits of the plaintiff's employment." Holland, 487 F.3d at 219 (quoting James, 368 F.3d at 375).

Plaintiff's allegations regarding his disability discrimination claim can be grouped into seven categories: (1) plaintiff was held to a higher communication standard than other employees when requesting leave (ECF No. 1 at ¶ 3); (2) plaintiff's supervisor made offensive comments regarding plaintiff's disability (id. at ¶ 4); (3) plaintiff was denied the opportunity to work assignments that pay overtime (id. at ¶ 5); (4) plaintiff was assigned additional trainings, inspections, and assignments (id. at ¶ 6); (5) defendant either denied plaintiff's reasonable accommodation request or revoked plaintiff's existing accommodation (id. at ¶¶ 7–10); (6) plaintiff's supervisor disclosed details relating to plaintiff's disability and accommodation to other employees (id. at ¶ 11); and (7) plaintiff received a reprimand for taking leave during a mandatory event (id. at ¶ 12).

Defendant argues that plaintiff's allegations are "either contradicted by the sworn testimony in the record, or are not actionable wrongs under the statutory threshold." (ECF No. 29-1 at 16). This court agrees. Plaintiff's bald assertions without evidentiary proof do not generate issues of fact so as to defeat summary judgment. Plaintiff fails to provide any evidence that he suffered an adverse action that "affect[ed] the terms, conditions, or benefits of [his] employment." Holland, 487 F.3d at 219. Plaintiff's submitted an affidavit from only one other person, a co-worker, who "believe[d] [plaintiff] was treated differently because of his disability

11

and that his rights were violated by the open discussion of FMLA." (ECF No. 38-1 at 2). Plaintiff, however, produced no evidence establishing that he suffered any adverse employment action. On the other hand, defendant produced evidence that directly contradicts plaintiff's allegations, including multiple sworn affidavits stating that all Safety Officers are "supposed to call and email [Bass] to notify [him] if they . . . need to be off for FMLA or any other reason," (ECF No. 29-6 at 4); other employees have never seen Bass discriminate against plaintiff or disparage plaintiff's use of FMLA leave, (ECF Nos. 29-8 at 3, 29-11 at 2, 29-12 at 2); opportunities for overtime pay assignments are announced at Safety Office meetings and shared with all safety officers, (ECF No. 29-6 at 5); fellow safety officers deny that Bass gives plaintiff more assignments or more physically strenuous assignments than the other safety officers receive, (ECF Nos. 29-11 at 2, 29-12 at 2); plaintiff's supervisor did not revoke plaintiff's accommodation or otherwise deny plaintiff's request to use FMLA to receive treatment, (ECF No. 29-6 at 4–6); and Bass did not disclose details relating to plaintiff's disability or accommodation to other employees, (ECF Nos. 29-6 at 4, 29-8 at 2; 29-11 at 2–3, 29-12 at 2–3).

Defendant highlights that the "only tangible adverse employment action taken against plaintiff . . . was a one day suspension in March 2015 when he violated the Bureau of Highways 'Mandatory Storm Policy' by failing to report to work, and failing to respond to phone calls and text messages from his supervisors during a snow emergency." (ECF No. 29-1 at 6). The Department of Public Works' Mandatory Storm Attendance Policy states that personnel who "fail to report for a storm emergency, either during a regular workday or for scheduled overtime, . . . will be considered absent without permission and marked 'X.'" (ECF No. 29-7). The policy further states that an employee's first "X" marking within a twenty-four-month period for being absent without permission will result in a one-day suspension without pay. (Id.)

12

Importantly, plaintiff concedes that the Bureau Chief and Director of the Department later rescinded this reprimand and suspension. (ECF No. 34 at 10, Ex. 23). As a result, these actions cannot rise to the level of an adverse action. Hopkins v. Balt. Gas & Elec. Co., 77 F.3d 745, 755 (4th Cir. 1996) (disciplinary warning that was subsequently removed from a personnel record is not an adverse action); Jeffers v. Thompson, 264 F. Supp. 2d 314, 330 (D. Md. 2003) (suspension that is not carried out does not amount to an adverse action).

Plaintiff has failed to show that there is a genuine dispute of material fact that he suffered an adverse employment action and, therefore, has not established a triable claim of disability discrimination. Accordingly, summary judgment is granted as to plaintiff's disability discrimination claim.

### B. Retaliation

Plaintiff alleges that defendant violated the ADA by retaliating against him for engaging in a protected activity. (ECF No. 1 at ¶ 16). Retaliation claims brought under either the ADA or Title VII are analyzed under the same standard. See Fox, 247 F.3d at 176; A Society Without A Name v. Virginia, 655 F.3d 342, 352 (4th Cir. 2011) (citing authority). Therefore, to establish a prima facie case of retaliation under the ADA, plaintiff must show: "(1) [he] engaged in a protected activity; (2) the employer acted adversely against [him]; and (3) there was a causal connection between the protected activity and the asserted adverse action." Strothers v. City of Laurel, Md., 895 F.3d 317, 327 (4th Cir. 2018) (quoting Ziskie v. Mineta, 547 F.3d 220, 229 (4th Cir. 2008)).

Under the ADA, a request for an accommodation is deemed a protected activity. Haulbrook v. Michelin N. Am., 252 F.3d 696, 706 (4th Cir. 2001) (stating that "the first protected activity capable of grounding an ADA retaliation claim is [plaintiff's] request for

reasonable accommodation"); see also Hamilton v. Prince George's Cty. Police Dep't, Civil No. DKC-17-2300, 2018 WL 1365847, at *7 (D. Md. Mar. 16, 2018) ("[a] request for accommodation is paradigmatic protected activities for ADA purposes"). Additionally, "the Fourth Circuit has held that the filing of an EEOC complaint generally constitutes protected activity." Kearns v. Northrop Grumman Sys. Corp., Civil No. ELH-11-1736, 2014 WL 2170781, at *10 (D. Md. May 23, 2014) (citations omitted). "Although it is not necessary that an employee's underlying discrimination claim be meritorious in order to succeed on a retaliation claim . . . it is necessary that an employee have an objectively reasonable belief that the employer committed an unlawful employment practice." Hurtt v. Baltimore County, Maryland, Civil No. JKB-12-445, 2014 WL 583008, at *7 (D. Md. Feb. 10, 2014) (citations omitted).

Defendant argues that plaintiff did not engage in a protected activity until plaintiff filed his EEOC complaint on October 31, 2016. (ECF No. 29-1 at 17). Defendant further asserts that it was not aware of plaintiff's EEOC complaint until December 5, 2016. (Id.) Therefore, defendant maintains that the only allegations that "could conceivably be the 'but for' result of this protected activity" relate to plaintiff's 2017 and 2018 performance evaluations because these evaluations were conducted after plaintiff filed an EEOC complaint. (Id.) Plaintiff, however, requested a reasonable accommodation for his disability on January 6, 2014. (ECF No. 34, Ex. 3 at 6). This court finds that plaintiff engaged in a protected activity when he requested an accommodation for his disability, satisfying the first element of an ADA retaliation claim. Hamilton, 2018 WL 1365847, at *7. Plaintiff engaged in a second protected activity when he filed a complaint with the EEOC and MCCR. Kearns, 2014 WL 2170781, at *10.

The second element of a prima facie claim of retaliation under the ADA requires plaintiff to show that he suffered an adverse employment action. Strothers, 895 F.3d at 327. "A plaintiff

can demonstrate that an employer 'acted adversely' by showing that 'a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination.'" Lewis v. Baltimore City Bd. of Sch. Commissioners, 187 F. Supp. 3d 588, 595 (D. Md. 2016) (quoting Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 68 (2006)). An adverse action in a retaliation claim must be "materially adverse." Burlington N., 548 U.S. at 68. This requirement "seeks to differentiate those harms that work a 'significant' detriment on employees from those that are relatively insubstantial or 'trivial.'" Adams v. Anne Arundel Cty. Pub. Sch., 789 F.3d 422, 431 (4th Cir. 2015) (quoting Burlington N., 548 U.S. at 68).

In his retaliation claim, plaintiff alleges the same discriminatory actions as alleged in his ADA discrimination claim. (ECF No. 1 at ¶¶ 3–12, 16). In addition, plaintiff alleges that he received "needs improvement" ratings on his annual performance reviews in 2016, 2017, and 2018 in retaliation for engaging in a protected activity. (ECF No. 1 at ¶¶ 13–16). Defendant argues that the "needs improvement" ratings on plaintiff's performance evaluations "had no materially adverse effects" on plaintiff and that a "formal reprimand – like the 'needs improvement' ratings in this case – [is], as a matter of law, not a materially adverse action." (ECF No. 29-1 at 17) (citing Hinton v. Virginia Union Univ., 185 F. Supp. 3d 807, 832 (E.D. Va. 2016)). Defendant argues that plaintiff lost no pay or benefits as a result of his performance evaluation ratings and plaintiff received salary increases on par with his peers. (Id. at 5–6). Moreover, defendant maintains that there was "good cause" for the "needs improvement" ratings on plaintiff's performance evaluations. (Id. at 18).

As discussed in the disability discrimination section above, none of the allegations plaintiff makes are supported by evidence that he suffered any materially adverse effect on his

15

employment. Specifically, the "needs improvement" ratings on plaintiff's performance evaluations do not constitute adverse actions. Thompson v. Potomac Elec. Power Co., 312 F.3d 645, 652 (4th Cir. 2002) (finding that a performance evaluation unaccompanied by tangible effects on employment, such as lost pay or a change in position, was not an adverse employment action); see also Toulan v. DAP Prods., Civil No. CCB-05-2254, 2007 WL 172522, at *9–10 (D. Md. Jan. 17, 2007), aff'd, 271 F. App'x 312 (4th Cir.2008) (finding that letters of reprimand, an insubordination warning, and a poor performance review had no tangible consequence on plaintiff's career and did not constitute a materially adverse action). In sum, because plaintiff has failed to establish a genuine dispute of material fact that he suffered an adverse employment action, his retaliation claim fails. Accordingly, summary judgment is granted as to plaintiff's retaliation claim.

## IV. CONCLUSION

For the foregoing reasons, defendant's Motion for Summary Judgment (ECF No. 29) is GRANTED and plaintiff's Motion to Submit Amended Affidavit (ECF No. 38) is GRANTED.

March 4, 2020  /s/
Beth P. Gesner
Chief United States Magistrate Judge